# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

|  |  |
|---|---|
| ELIA COLON, ANTHONY JAMES, TIFFANY JAMES, DOLLY MALDONADO, LA'TASHA MANN, JOHN McDONALD, ALYSCIA RAMOS, ANGEL RAMOS, TOMKIA RICHARDSON, HELEN SCOTT, RADAMES VELEZ, and CHARYETTA WRIGHT, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>FLORIDA HEALTH SCIENCES CENTER, INC., d/b/a TAMPA GENERAL HOSPITAL,<br><br>        Defendant. | Case No.:<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>[Filed concurrently with Civil Cover Sheet and Certificate of Interested Persons and Corporate Disclosure Statements]<br><br>Action Filed:        July 27, 2023<br>Complaint Served: August 1, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital ("Defendant" or "TGH"), hereby removes the action filed by Plaintiffs Elia Colon, Anthony James, Tiffany James, Dolly Maldonado, La'Tasha Mann, John McDonald, Alyscia Ramos, Angel Ramos, Tomika Richardson, Helen Scott, Radames Velez, and Charyetta Wright ("Plaintiffs"), individually and on

behalf of all others similarly situated, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-013991, to the United States District Court for the Middle District of Florida.  In support of removal, TGH states as follows:

## JURISDICTION AND VENUE

1.      This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.      This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3.      On July 21, 2023, Plaintiffs, individually and on behalf of all others similarly situated, filed a Class Action Complaint (the "Complaint") against TGH in Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-013991 (the "State Court Action").  Plaintiffs filed the Complaint as a putative class action.

4.      On August 3, 2023, Plaintiffs served TGH with copies of the Summons and Complaint via process server.  Pursuant to 28 U.S.C. § 1446(a), true

and correct copies of documents received in the State Court Action by TGH are attached hereto as exhibits.  Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (2) the docket in the State Court Action (**Exhibit B**); and (3) service documents (i.e., summons and proof of service) filed in the State Court Action (**Exhibit C**).

5.        No other pleadings or  substantive filings  (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

6.        This removal is timely because TGH filed this removal within 30 days of being served with the Complaint.  *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

7.        <u>Basis of Original Jurisdiction</u>.  This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of

citizenship of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).

8.      As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), TGH may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.  *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

## THE ACTION IS PLED AS A CLASS ACTION

9.      CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute* or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added); *Lowery*, 483 F.3d at 1199 n. 35.

10.      Plaintiffs bring this action as a "class action" and seek class certification pursuant to Florida Rule of Civil Procedure 1.220.  [Compl., ¶ 74.] Because Florida's Class Action rule, Florida Rule of Civil Procedure 1.220, "is not only 'similar' to, but is based on, Rule 23," *Coquina Crossing Homeowners Assoc.,*

*Inc. v. MHC Operating Ltd. P'ship*, Case No. 3:21-cv-84-MMH-LLL, 2022 WL

843582, at *7 (M.D. Fla. Mar. 22, 2022), the first CAFA element is satisfied.

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

11.     Plaintiffs allege that, "on May 31, [TGH] 'detected unusual activity

on [its] computer systems'" and later reported that an unauthorized third party had

gained accessed to TGH's network and obtained certain files from its systems (the

"Data Incident"), which resulted in the alleged compromise of personally

identifiable information ("PII") and personal health information ("PHI")[1] of

approximately 1.2 million individuals, including Plaintiffs.  [Compl., ¶¶ 3–6; 29–

30.]  Plaintiffs further allege that TGH could have prevented the Data Incident "had

it implemented and maintained adequate data security measures and protocols in

order to secure and protect its patients' data."  [*Id.* at ¶ 8.]

12.     Based on these allegations, Plaintiffs assert eight causes of action

against TGH: (1) negligence, (2) negligence *per se*, (3) breach of implied contract;

(4) breach of fiduciary duty; (5) breach of confidence; (6) violation of the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*;

(7) unjust enrichment; and (8) injunctive and declaratory relief.  [*See generally,*

---

[1] Plaintiffs state that the PII and PHI impacted may have included "patients' names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or treatment information." [Compl., ¶ 1.]

Compl.]

13.     Furthermore, Plaintiffs purport to bring these eight causes of action on behalf of themselves and class defined as "All Florida citizens whose PII and/or PHI was compromised in the data breach disclosed by [TGH] on July 19, 2023." [*Id.* at ¶ 74.]

14.     Further, Plaintiffs allege that approximately 1.2 million people were impacted in the Data Incident.  [*Id.* at ¶ 77; *see also id.* at ¶ 5 ("[T]he PII and/or PHI of 1.2 million patients [was] put at risk.").]

15.     To date, TGH has mailed notification to approximately 1,314,425 people, the vast majority of whom reside in the United States.  Of those notices, sent, approximately 1,127,755 were sent to Florida addresses.

16.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

17.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."  *See also Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-T-33TGW, 2020 WL 5758003, at *2 (M.D. Fla. Sept. 28, 2020) (stating that minimal diversity is met if "a single putative class member [i]s a citizen of a state other than [that of defendant] at the time of removal").

18.    <u>Defendant's Citizenship</u>.   Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."   *See also RVRoof.com, Inc. v. Ariz. RV Specialist, LLC*, Case No. 3:19-cv-674-J-34MCR, 2019 WL 2452824, at *2 (M.D. Fla. June 12, 2019) (quoting 28 U.S.C. § 1332(c)(1)). "A corporation's principal place of business is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities,'" *i.e.*, the corporation's "nerve center."   *Cohen v. Burlington*, No. 22-13222, 2023 WL 4364499, at *3 n. 2 (11th Cir. July 6, 2023) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)); *see also Tavares v. Pelican Int'l, Inc.*, Case No. 3:22-cv-554-MMH-MCR, 2022 WL 1619172, at *2 (M.D. Fla. May 23, 2022).   "In practice, this normally is 'the place where the corporation maintains its headquarters[.]'" *Tavares*, 2022 WL 1619172, at *2 (quoting *Hertz*, 559 U.S. at 93); *see id.* ("A corporation's headquarters is normally . . . its principal place of business.").

19.    As alleged in the Complaint, TGH is a private corporation with its principal place of business in Florida.  [Compl., ¶ 23 (stating that TGH is a "Florida corporation, with its principal place of business in Tampa, Florida").]  Accordingly, pursuant to *Hertz*'s nerve center test, TGH has its principal place of business, *i.e.*, its headquarters, in Florida.  Specifically, TGH's headquarters are located at 1 Tampa

General Circle, Tampa, Florida 33606.[2]  Further, TGH is organized under the laws of Florida.  Accordingly TGH is a citizen of Florida for purposes of CAFA.

20.     <u>Plaintiffs' and the Putative Class's Citizenship</u>.  For diversity purposes, an individual is a "citizen" of the state in which he or she is domiciled. *Arnold v. Leavy Bros. Moving & Storage, Inc.*, Case No. 3:22-cv-427-BJD-JBT, 2023 WL 2347488, at *1 (M.D. Fla. Mar. 3, 2023) (citing *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)).  "A person's domicile is the place of 'his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'"  *Smith*, 991 F.3d at 1149 (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)).  Said differently, "domicile (or citizenship) consists of two elements: residency in a state and intent to remain in that state."  *Id.*  "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent."  *Id.*

21.     Here, Plaintiffs all allege in the Complaint that they are all "residents" of Florida.  [*See* Compl., ¶¶ 11–22 ("Plaintiff Elia Colon is a Florida

---

[2] *See* Hospital Contact Information, https://www.tgh.org/about-tgh/contact-us (last visited August 13, 2023).

resident . . ."); ("Plaintiff Anthony James is a resident of Temple Terrace, Florida . . ."); ("Plaintiff Tiffany James is a Florida resident . . ."); ("Plaintiff Dolly Maldonado is a Florida resident . . ."); ("Plaintiff La'Tasha Mann is a resident of Fort Myers, Florida . . ."); ("Plaintiff John McDonald is a resident of Tampa, Florida . . ."); ("Plaintiff Alyscia Ramos is a resident of Bartow, Florida . . ."); ("Plaintiff Angel Ramos is a resident of Bartow, Florida . . ."); ("Plaintiff Tomika Richardson is a Florida resident. . ."); ("Plaintiff Helen Scott is a Florida resident . . ."); ("Plaintiff Radames Velez is a Florida resident . . ."); ("Plaintiff Charyetta Wright is a resident of Riverview, Florida . . .").]  Absent other allegations of citizenship, it is unclear whether Plaintiffs are *citizens* of the state of Florida.  *See Smith*, 991 F.3d at 1149 ("Residency is necessary, but insufficient, to establish citizenship in a state.") (citing *Travaglio*, 735 F.3d at 1269); *see also Telari Mgmt. FZC, LLC v. Vasilyev*, CASE NO: 23-80640-CV-MIDDLEBROOKS, 2023 WL 3778256, at *1 (S.D. Fla. Apr. 20, 2023) ("Domicile is not synonymous with residence; one may temporarily reside in one location, yet retain domicile in a previous residence.") (quoting *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1341–42 (11th Cir. 2011)).  However, as explained in more detail below, even assuming Plaintiffs are citizens of Florida for purposes of CAFA, the putative class Plaintiffs seek to represent includes no temporal limitation on "Florida citizenship."  Said differently, Plaintiffs do not make clear in their class definition whether the proposed class includes individuals who

were citizens of Florida when they provided their information to TGH, when TGH sent notice of the Data Incident, at the time the Complaint was filed, or at the time this Notice of Removal is filed.   Accordingly, absent any temporal limitation whatsoever, it is more likely than not that Plaintiffs' class captures individuals who may have been Florida citizens *at some point in time* but no longer are.

22.     Under CAFA, if minimal diversity exists at the time of removal, federal diversity jurisdiction cannot be divested.  *See Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (the critical time in a challenge to the subject matter jurisdiction of the district court is the date of removal, and subsequent events, even the loss of the required amount in controversy, do not divest the court of jurisdiction); *see also Webb v. Cuna Mut. Grp.*, Civil Action No. 09-0270-CG-B, 2010 WL 366688, at *3 (S.D. Ala. Jan. 22, 2010) ("Events occurring subsequent to removal, . . . whether beyond the plaintiff's control or the result of his own volition, do not oust the district court's jurisdiction once it has attached.") (quoting *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)).  As described above, Plaintiffs here have provided no temporal limitation on the "Florida citizenship" required for inclusion in their class definition, or any other limitation to clearly limit the class to only "current" Florida citizens.  *See, e.g.*, *Smith*, 991 F.3d at 1157 ("But the definition does not limit the class to *current* Florida residents [or citizens] . . . Thus, the class definition on its face encompasses class members who currently

reside in Florida facilities [and are citizens of Florida] and those who resided in facilities [and were citizens of Florida] during the relevant four-year period, but have since moved to another state. . . . [C]itizenship for purposes of CAFA jurisdiction is based on *current residency and an intent to remain*.") (emphasis added); *Arbuckle Mt. Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 343 (5th Cir. 2016) (exercising CAFA jurisdiction because the class definition did not clearly limit class membership of gas and mineral "owners" to current, Texas citizens): *see also Anderson v. Davis Wright Tremain LLP*, Case No. 3:20-cv-01194-AC, 2021 WL 7184127, at *11–13 (D. Ore. July 14, 2021) (denying motion to remand and declining to read a temporal limitation into class definition which stated "Class Members are . . . Oregon citizen[s]" and noting that the plaintiff's definition lacked a temporal term like "currently"); *In re Hannaford Bros Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 77 (1st Cir. 2009) (defining class to *explicitly exclude* "any persons and entities who [wer]e not citizens of the State of Florida")

23.     In short, Plaintiffs' identified class here includes citizens of Florida, regardless of whether those persons were current or former Florida citizens. Therefore, former Florida citizens whose PII and PHI were "acquire[d] and electronically stor[ed]" on TGH's systems, [Compl., ¶ 27], who moved to another state after the filing of the complaint but prior to removal, are members of the class, but citizens of their new states for purposes of minimal diversity under CAFA.

Likewise, individuals who may have moved to Florida post-removal are also part of the putative class and are likely considered Florida citizens for purpose of minimal diversity.   Again, Plaintiffs' Complaint fails to clearly limit putative class membership to current Florida citizens sufficient to destroy diversity.   Plaintiffs' Complaint even fails to establish the citizenship of the *named Plaintiffs*.

24.      Coupled with the fact that , to date, Defendant has sent notifications of the Data Incident to people with addresses in all 50 states, the District of Columbia, and internationally, it is more likely than not that at least one moment of the putative class is "citizen" of state different than Florida.   That is, although "residency does not equate to citizenship," *See Smith*, 991 F.3d at 1149 (citing *Travaglio*, 735 F.3d at 1269), in this case, where only one putative class member must reside and intend to remain in a state other than Florida, it is more likely than not that at least one of the approximately 1,127,755 individuals notified with a Florida address is a non-Florida citizen.   In fact, even a preliminary review of TGH's mailing list and public records, indicates that at least one Florida notification addressee may have formerly been a Florida citizen, but is now likely a citizen of another state.   For example:

- K***** * ********Y was notified following the Data Incident at a Florida address.   According to public records, she formerly resided as a Florida address.   Current public records such as "Experian Credit Header," phone records, motor vehicle records records, and real property tax assessor sources, indicate that she is likely a citizen of Illinois.

- T**** * ****N was notified following the Data Incident at a Florida address.  According to public records, he formerly resided at a Florida address.  Current public records, including bank accounts, "Experian Credit Header," and people find indicate that he is likely a citizen of Indiana.

25.     Accordingly, as established above, "minimal diversity" of citizenship exists pursuant to CAFA because TGH is a citizen of the State of Florida, and it is more likely than not that at least one of the approximately 1,127,755 putative class members notified with a Florida address is a citizen of a state other than Florida.

26.     In addition, TGH also notes that Plaintiffs previously agreed to consolidation of their action in the state court action with cases that included nationwide class definitions.  [*See* Case No. 23-CA-013984, Dkt. No. 11.]  If, after removal, this action is also consolidated with any of the cases already pending in the Middle District of Florida, Plaintiffs' class definition will be mooted by the filing of an Amended Consolidated Complaint containing a nationwide class.  Accordingly, for any one of a number of legal or practical reasons, minimal diversity is satisfied under the circumstances.

27.     <u>No CAFA Exceptions Apply</u>.[3]  Plaintiffs also cannot meet their burden to show, let alone demonstrate, that CAFA's "home state" or "local controversy exception" applies. *See Alvarez v. Loancar*e *LLC*, Case No. 20-21837-

---

[3] TGH only briefly addresses the mandatory exceptions to CAFA jurisdiction and reserves all rights to raise additional or other arguments regarding any CAFA exception.

CIV-ALTONAGA/Goodman, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021) (citing *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017)).

28.      Under the "home state" exception to CAFA, "a district court must 'decline to exercise jurisdiction over class actions in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'" *Day*, 2020 WL 5758003, at *5 (citation omitted).  Similarly, the "local controversy exception" requires a district court to "decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)).  "Both exceptions have a similar requirement that can only be satisfied if a defendant shares a state of citizenship with two-thirds of the proposed plaintiff classes, and the action was originally filed in that same state." *Alvarez*, 2021 WL 184547, at *6.  The "local controversy exception" also has the added requirement that states that the Court must decline to exercise jurisdiction if, "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person." *Lowery*, 483 F.3d at 1200 n. 37 (quoting 28 U.S.C. § 1332(d)(4)(A)(ii)).

29.     First, the "local controversy" exception does not apply here because it is not true that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person" in the prior 3-years.  To the contrary, a class action stemming from the same Data Incident and asserting the same or similar causes of action and seeking to represent a nationwide class and Florida subclass was filed in the same state court and has been removed to this District.  *See DiPierro v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed under Case No. 23-CA-013984 (Fla. 13th Jud. Cir., Hillsborough Cty.) & removed and now under Case No. 8:23-cv-1864-KKM-UAM (M.D. Fla.).  Further, at least eleven of other class actions have been filed stemming from the Data Incident, which suggest the "local controversy" exception is inapplicable under the circumstances.  *See Hunter v. City of Montgomery*, Civil Action No. 2:15-653-BJR, 2016 WL 9444333, at *2 (M.D. Ala. Aug. 11, 2016) (stating that the requirement asking "whether a sufficiently similar case has been filed within the three years immediately preceding this case . . . is meant as a test for whether a controversy is truly localized," and further stating that "if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that th[e local controversy] exception is intended to address") (citation omitted).

30.     Second, neither CAFA exception applies because with notification

letters sent to individuals with addresses in all 50 states, there simply is no way to know who a citizen of any state is without speaking directly to each of those individuals, including the 1,127,755 individuals notified at a Florida address. *See Smith*, 991 F.3d at 1157 (holding that to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient. What is in another man's mind must be determined by what he does as well as by what he says"). This is especially true here, where "citizens of other states may live part of the year in Florida . . . , but maintain a permanent residence elsewhere." *Id* at 1158. Further exacerbating this problem here is the nature of the putative class, many of whom may have visited TGH only for a one-off hospital visit while visiting or temporarily residing in Florida.

31.     In short, because at least one putative class member is likely a citizen of a state other than Florida, "minimal diversity" is established pursuant to CAFA, and no evidence exists to suggest any of the exceptions to CAFA apply.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[4]

32.    Where a complaint does not specify the amount of damages sought, as is the case with Plaintiffs' Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  28 U.S.C.A. § 1446(c)(2)(B); *Penton v. Centennial Bank*, Case No. 4:18-cv-450-AW-MAF, 2021 WL 8014675, at *3 (N.D. Fla. July 30, 2021) (citing *Fed. Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).   The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).   "The goal is to determine 'what the controversy is in the case, not how much plaintiffs are ultimately likely to recover as a result of the lawsuit.'"  *Penton*, 2021 WL 8014675, at *3 (quoting *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir. 2020)).   "Accordingly, dismissal is appropriate only if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"   *Id.* (quoting *McKinnon Motors, LLC*, 329 F.3d at 807).   Furthermore, in determining the amount

---

[4] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiffs can state a claim or are entitled to damages in any amount. Defendant denies liability, denies Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

in controversy, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5,000,000, *Topalli v. PetSmart, LLC*, Case No.: 6:22-cv-1670-WWB-EJK, 2023 WL 2928301, at *1 (M.D. Fla. Apr. 13, 2023) (citation omitted), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted).

33.     Here, Plaintiffs seek damages, including, but not limited to, attorneys' fees; actual, nominal, consequential, enhanced, compensatory, and punitive damages; prejudgment interest on all amounts awarded; and equitable, injunctive, and declaratory relief, including "equitable relief enjoining [TGH] from engaging in the wrongful conduct complained of [in the Complaint]" and "compelling [TGH] to use appropriate cyber security methods and policies with respect to PII and PHI collection, storage, and protection," among other things. [Compl., Prayer for Relief.]

34.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

35.     <u>Negligence and Negligence *Per Se* Claims.</u>   As stated above, Plaintiffs state claims for negligence and negligence *per se*.  [Compl., ¶¶ 88–114 (negligence); 115–20 (negligence *per se*).]

36.     Plaintiffs allege that TGH "knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties."  [*Id.* at ¶ 89.]  Plaintiffs also argue that that duty included, among other things, "designing, maintaining, and testing [TGH]'s security protocols to ensure that Plaintiffs' and Class Members' Private Information in Defendant's possession was adequately secured and protected[.]"  [*Id.*]  Plaintiffs further allege that TGH had duties arising under statute, including, *inter alia*, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1302(d) *et seq.*; Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45; and under Florida law, Fla. Stat. §§ 456.057 and 501.171.  [*Id.* at ¶ 116.]

37.     Plaintiffs further allege that TGH breached these and other duties, and therefore was negligent, by "failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII and PHI within its possession," [*id.* at ¶ 102], and "by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII and PHI," [*id.* at ¶ 103].

38.     Plaintiffs also claim that TGH violated its statutory duties "by failing to employ industry standard data and cybersecurity measures to ensure its compliance with those laws, including, but not limited to, proper segregation, access

controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing," and that a breach of such duties constitutes negligence *per se*.   [*Id.* at ¶¶ 117 & 120.]

39.      Plaintiffs' Complaint contains no allegations that would support or suggest the amount in damages they or any of the putative class members allegedly sustained as a consequence of TGH's negligence or negligence *per se*.   However, because Plaintiffs seek recovery for damages that include "years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights" and allege they are "in danger of imminent harm in that their PII and PHI . . . will be used for fraudulent purposes," [*id.* at ¶¶ 111–12; *see also id.* at ¶¶ 55 & 59 (stating that "Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records" and are entitled to demands for "identity theft and fraud resulting from the theft of their PII and PHI" and "costs associated with the detection and prevention of identity theft [and] costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services")], one option for assigning a value to these damages is through the cost of credit monitoring.

40.      Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $19.95 per person per month.  For example, LifeLock offers a product,

called Norton360 with LifeLock Advantage, which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $15.99 per month if paid annually.[5]  Similarly, both Equifax[6] and Experian[7] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively.  Multiplying just the cost of providing <u>one month</u> of credit-monitoring services at $15.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $18,032.802.40 (calculated as: 1,127,755 individuals notified with Florida addresses, times 1 month, times $15.99 per month).

41.     Accordingly, Plaintiffs' and the putative class members' potential credit monitoring damages alone far exceed the $5,000,000 CAFA amount-in-controversy jurisdictional amount.   Combined with Plaintiffs' other alleged

---

[5] *See* https://www.lifelock.com/family-plans/?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:ggl:en:e:br:ll&utm_source=google&utm_medium=cpc&utm_campaign=1584904959&adgroup=66661422904&utm_term=lifelock%2520credit%2520monitoring&targetid=kwd-295997165667&matchtype=e&utm_content=297610135624&network=g&device=c&adp=&testgroup=&pgrid=66661422904&ptaid=kwd-295997165667&gclid=EAIaIQobChMI0v-3-eG28wIVEFpgCh2XSQzTEAAYASABEgLMPPD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[6] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[7]*See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited on August 15, 2023).

negligence and negligence *per se* damages, the total amount in controversy is well in excess of $5,000,000.

42.    <u>Breach of Fiduciary Duty Claim</u>.  Plaintiffs also claim that TGH had a "fiduciary duty to act for the benefit of the Plaintiffs and the Class" which required TGH to "become the guardian of Plaintiffs' and Class Members' PII and PHI" and "included the obligation to safeguard Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach." [Compl., ¶¶ 132–37.]

43.    Plaintiffs claim that TGH breached its fiduciary duty to Plaintiffs and the class by, among other things, failing to "properly encrypt and otherwise protect the integrity of the system containing Plaintiffs' and Class Members' PII and PHI"; "implement policies and procedures to prevent, detect, contain, and correct security violations"; and "protect against any reasonably-anticipated threats or hazards to the security of integrity of electronic protected health information." [*Id.* at ¶ 135.]  As a result, Plaintiffs claim that they and class members have suffered or will suffer injury, including, but not limited to:

> (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal Information; (iii) out-of-pocket expenses associated with prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data [Incident]; (v) the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect patient Personal Information in their[sic] continued possession; and (vi) future

costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data [Incident] for the remainder of the lives of Plaintiffs and Class Members.

[*Id.* at ¶ 136.]

44.     Plaintiffs' Complaint contains no allegations that would support or suggest the amount in actual damages to which they or any of member of the Class are allegedly entitled for Defendant's alleged breach of fiduciary duty. Therefore, Defendant does not include any specific "breach of fiduciary duty" damages in the calculation of the total amount in controversy. But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $18,032.802.40. Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

45.     <u>Breach of Implied Contract Claim</u>. Plaintiffs also assert that TGH breached an implied contract with Plaintiffs and putative class members. [*See* Compl., ¶¶ 121–31.]

46.     Specifically, Plaintiffs claim that, "[when Plaintiffs and Class Members provided their PII and PHI to [TGH], they entered into implied contracts with [TGH], under which [TGH] agreed to take reasonable steps to protect Plaintiffs' and Class Members' PII and PHI, and to timely notify them in the event of a data

breach." [*Id.* at ¶ 122.] Plaintiffs further claim that TGH "breached its implied contracts with Plaintiffs and Class Members by failing to safeguard Plaintiffs' and Class Members' PII and PHI and by failing to provide them with timely and accurate notice of the Data [Incident]." [*Id.* at ¶ 129.]

47. Plaintiffs' Complaint contains no allegations that would support or suggest the amount in actual damages to which they or any of member of the Class are allegedly entitled for Defendant's alleged breach of implied contract. Therefore, TGH does not include any specific "breach of implied contract" damages in the calculation of the total amount in controversy. But, again, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $18,032.802.40. Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

48. <u>Claim for Violation of the Florida Deceptive and Unfair Trade Practice Act.</u> Plaintiffs claim that TGH has violated the FDUTPA, Fla. Stat. § 501.201 *et seq*. [Compl., ¶¶ 155–65.]

49. Specifically, Plaintiffs claim that TGH violated the FDUTPA by "engaging in . . . unfair and deceptive practices," including by "fail[ing] to maintain adequate and reasonable data and cybersecurity protocols for Plaintiffs' and Class

Members' PII and PHI in violation of state and federal laws and [TGH]'s own privacy practices and policies" and by "fail[ing] to take reasonable measures to destroy or dispose of PII and PHI and timely notify its patients of the Data [Incident] in violation of Florida law." [*Id.* at ¶ 161.] As a result of TGH's violation of the FUDTPA, Plaintiffs claim they and the class have been injured, [*see id.* at ¶ 162], and therefore request damages in the form of injunctive and declaratory relief, actual damages, and attorneys' fees and costs, [*id.* at ¶¶ 162–65].

50.     Plaintiffs' Complaint again contains no allegations that would support or suggest the amount in "damages" they or any member of the Class allegedly sustained as a result of Defendant's alleged violation of the FDUTPA. Therefore, Defendant does not include in the calculation of the total amount in controversy any alleged violation-of-FDUTPA damages. However, the FDUTPA allows private parties to recover "actual damages, attorney's fees, and court costs," *N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citing Fla. Stat. § 501.211(2)), all relief which Plaintiffs seek. Accordingly, when these damages—permitted and recoverable under law—are combined with the cost of just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the putative class, in addition to the other damages Plaintiffs claim they and the Class have suffered, the amount in controversy further exceeds CAFA's $5,000,000 threshold. *See, e.g.*, *Shaver v. Ford Motor Co.*,

768 F. Supp. 2d 1235, 1237 (S.D. Fla. 2011) (CAFA amount-in-controversy requirement met and evident on face of plaintiff's complaint when plaintiff asserted FDUTPA claim involving "at least hundreds of thousands of persons").

51.     _Total Amount in Controversy_.  Based on the discussion above, the amount in controversy based on just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the Class exceeds the $5,000,000 CAFA threshold.   Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of compensatory damages, injunctive or declaratory relief, or attorneys' fees, which, as discussed below, add even more to the total amount in controversy.

52.     _Prayer for Other Monetary and Injunctive Relief and Other Claims_. In addition to the damages discussed above, Plaintiffs also state claims for unjust enrichment, [Compl., ¶¶ 166–74]; breach of confidence, [_id._ at ¶¶ 138–54]; and declaratory and injunctive relief, [_id._ at ¶¶ 175–81], including, injunctive relief requiring Defendant to implement and maintain reasonable security measures, including, but not limited to, the following:

- "[o]rdering that [TGH] engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on [TGH]'s systems on a periodic basis, and ordering [TGH] to promptly correct any problems or issues detected by such third-party security auditors";

- "[o]rdering that [TGH] audit, test, and train its security personnel regarding any new or modified procedures";

- "[o]rdering that Defendant conduct regular computer scanning and security checks"; and

- "[o]rdering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in respond to a breach,"

[*id.* at ¶ 181].

53.     In certain circumstances, where the value of declaratory or injunctive relief is not too speculative, the value can be considered when determining the amount in controversy.  *See Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013).  The value of declaratory or injunctive relief is based upon the "value of the object of the litigation."  *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation omitted).  Courts in the Eleventh Circuit consider the "value of the object of the litigation" from the plaintiff's perspective, *i.e.*, "the monetary value of the benefit that would flow to the plaintiffs if the relief [they were seeking] were granted."  *Id.* at 1316 (citation omitted).  And under CAFA, courts "aggregate the claims of the individual class members and consider the monetary value that would flow to the entire class if the declaratory [or injunctive] relief were granted."  *Id.*

54.     Here, however, no allegations in the Complaint allow Defendant to calculate the amount of Plaintiffs' injunctive relief demand, and, therefore, TGH has not included that value in the calculation of the total amount in controversy.

Nevertheless, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## ATTORNEYS' FEES

55.     When underlying substantive law provides for an award of attorneys' fees, a party may include a "reasonable amount" in its calculation in the amount in controversy. *McLawhorn v. GEICO Indem. Co.*, Case No. 8:17–cv–156–T–33AEP, 2017 WL 1277744, at *5 (M.D. Fla. Apr. 6, 2017) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)).   Here, Plaintiffs' FDUTPA claim provides for the award of attorneys' fees to the prevailing party, and such fees are available under FDUTPA in calculating the amount in controversy. *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1305 (S.D. Fla. 2014) ("[T]he Court may consider attorney's fees and costs available under FDUTPA in calculating the amount in controversy[.]") (citing *McKinnon Motors, LLC*, 329 F.3d at 808 n. 5).

56.     Although only "attorneys' fees incurred up to the time of removal may be included in the amount in controversy" calculation, *McLawhorn*, 2017 WL 1277744, at *5, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## NOTICE

57.     As required by 28 U.S.C. § 1446(d), TGH is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice

of Removal with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

WHEREFORE, Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital removes the State Court Action from the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to U.S. District Court for the Middle District of Florida.

Respectfully submitted,

DATED:  August 23, 2023

**BAKER & HOSTETLER LLP**

By: */s/ Julie Singer Brady*

Julie Singer Brady
Florida Bar No. 389315
Email:   *jsingerbrady@bakerlaw.com*
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Casie D. Collignon (*pro hac vice forthcoming*)
Sarah A. Ballard (*pro hac vice forthcoming*)
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF REMOVAL** was filed and served through the Court's ECF system on this 23rd day of August, 2023, on all counsel of record.


*/s/ Julie Singer Brady*
Julie Singer Brady