EXHIBIT A

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
### CIVIL DIVISION

| | |
|---|---|
| ELIA COLON, ANTHONY JAMES, TIFFANY JAMES, DOLLY MALDONADO, LA'TASHA MANN, JOHN McDONALD, ALYSCIA RAMOS, ANGEL RAMOS, TOMIKA RICHARDSON, HELEN SCOTT, RADAMES VELEZ, and CHARYETTA WRIGHT, individually and on behalf of all others similarly situated, | **Case No.:** |
| *Plaintiffs,* | **COMPLAINT – CLASS ACTION** |
| v. | **JURY DEMAND** |
| FLORIDA HEALTH SCIENCES CENTER, INC. D/B/A TAMPA GENERAL HOSPITAL, | |
| *Defendant.* | |

Plaintiffs Elia Colon, Anthony James, Tiffany James, Dolly Maldonado, La'Tasha Mann, John McDonald, Alyscia Ramos, Angel Ramos, Tomika Richardson, Helen Scott, Radames Velez, and Charyetta Wright ("Plaintiffs"), individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Tampa General" or "Defendant"), based upon personal knowledge with respect to Plaintiffs and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## <u>INTRODUCTION</u>

1.      Plaintiffs bring this class action against Tampa General for its failure to properly secure Plaintiffs' and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). According to Tampa General, the PII and PHI may have included

patients' names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or treatment information.

2.      Tampa General failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiffs seek, among other things, orders requiring Tampa General to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.      On May 31, Tampa General "detected unusual activity on [its] computer systems."

4.      On July 18, 2023, a hacker group going by the name "Snatch Team" claimed to have acquired four terabytes of data from Tampa General.

5.      It was only after that disclosure that Tampa General confirmed the data breach, adding that the PII and/or PHI of 1.2 million patients had been put at risk.

6.      Tampa General's public statements do not indicate that it intends to offer those patients any form of relief that might reduce the likelihood of their data being misused. Tampa General is only "continuously updating and hardening systems to help prevent events such as this from occurring and has implemented additional defensive tools and increased monitoring."

7.      This is not the first instance in which Tampa General has allowed unauthorized access to patient data. In 2013, Tampa General disclosed that unauthorized parties obtained patient information, including names, addresses, birthdates, Social Security numbers, admitting diagnosis and insurance information from Tampa General systems.

8.      Tampa General could have prevented the recent Data Breach had it implemented and maintained adequate data security measures and protocols in order to secure and protect its patients' data in the wake of that incident.

9.      Plaintiffs and Class Members would not have provided their PII and PHI to Tampa General if they had known that Tampa General would breach its promises and agreements by failing to ensure that it used adequate security measures.

10.     Plaintiffs seek to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were stolen in the Data Breach. Plaintiffs seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Tampa General's data security policies and practices.

## PARTIES

11.     Plaintiff Elia Colon is a Florida resident who has been a patient at Tampa General facilities in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services

12.     Plaintiff Anthony James is a resident of Temple Terrace, Florida, who has been a patient at Tampa General facilities in recent years. He gave PII and PHI to Tampa General as a condition of receiving medical services.

13.     Plaintiff Tiffany James is a Florida resident who has been a patient at Tampa General facilities on several occasions in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

14.     Plaintiff Dolly Maldonado is a Florida resident who has been a patient at Tampa General facilities in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

15.     Plaintiff La'Tasha Mann is a resident of Fort Myers, Florida who has been a patient at Tampa General facilities on multiple occasions over a period of several years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

16.     Plaintiff John McDonald is a resident of Tampa, Florida who has been a patient at Tampa General facilities in recent years. He gave PII and PHI to Tampa General as a condition of receiving medical services.

17.     Plaintiff Alyscia Ramos is a resident of Bartow, Florida who has been a patient at Tampa General facilities in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

18.     Plaintiff Angel Ramos is a resident of Bartow, Florida who has been a patient at Tampa General facilities in recent years. He gave PII and PHI to Tampa General as a condition of receiving medical services.

19.     Plaintiff Tomika Richardson is a Florida resident who has been a patient at Tampa General facilities in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

20.     Plaintiff Helen Scott is a Florida resident who has been a patient at Tampa General facilities in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

21.     Plaintiff Radames Velez is a Florida resident who has been a patient at Tampa General facilities in recent years. He gave PII and PHI to Tampa General as a condition of receiving medical services.

22.     Plaintiff Charyetta Wright is a resident of Riverview, Florida who has been a patient at Tampa General facilities on multiple occasions in recent years. She gave PII and PHI to Tampa General as a condition of receiving medical services.

23.     Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital is a Florida corporation, with its principal place of business in Tampa, Florida.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over Plaintiffs' claims under Florida Stat. § 26.012 and § 86.011. This Court has jurisdiction over this dispute because Plaintiffs seek on behalf of themselves and Class Members damages in excess of the minimum jurisdictional limits of this Court, as well as equitable relief.

25.     Venue is proper in Hillsborough County pursuant to Florida Statutes § 47.011 and § 47.051 because Tampa General is headquartered and does business in this county, the cause of action accrued in this county, and Tampa General has an office for the transaction of its customary business in this county.

26.     This Court has personal jurisdiction over Tampa General pursuant to Florida Statutes § 48.193, as Tampa General personally or through its agents operated, conducted, engaged in, or carried on a business or business venture in Florida and/or had offices in Florida, committed tortious acts in Florida, and engaged in significant business activity within Florida.

## FACTUAL ALLEGATIONS

### The Data Breach

27.     Tampa General employs 8,000 people, and claims over 550,000 outpatient visits, over 100,000 emergency room visits, and over 54,000 inpatient discharges for the year ended September 30, 2021."[1] Due to the nature of these the services it provides, Tampa General acquires and electronically stores patient PII and PHI. As a healthcare provider, Tampa General is required to ensure that PII and PHI are not disclosed or disseminated to unauthorized third parties without its patients' express written consent.

28.     Tampa General has long been well-versed as to the threat hackers pose to confidential medical information. In 2016, it resolved litigation arising from the data breach disclosed in 2013 with a settlement class comprised of all patients "whose patient information was inappropriately accessed during the period from December 19, 2009 through December 19, 2014."[2]

29.     On July 18, 2023, it was reported that "Snatch Team has listed Tampa General Hospital on their leak site today. There is … nothing on the hospital's site about any breach or incident."[3]

30.     On July 19, 2023, Tampa General disclosed that approximately 1.2 million patients were in fact affected. On or around the same date, Tampa General posted on its website

---

[1] Tampa General Hospital 2021 Annual Report, at 116, available at https://www.tgh.org/about-tgh/tgh-annual-report (last visited July 21, 2023).

[2] Tampa General Hospital Data Breach Class Action Settlement, available at https://topclassactions.com/lawsuit-settlements/closed-settlements/tampa-general-hospital-data-breach-class-action-settlement/ (last visited July 21, 2023).

[3] InfoSec Exchange, available at https://infosec.exchange/@PogoWasRight/110737155568450064 (last visited July 21, 2023).

a brief notice disclosing that it discovered the incident on May 31, 2023. But Tampa General did not disclose it until after it was reported on an independent website.

31.     Tampa General has not reported the incident to the U.S. Department of Health and Human Services Office for Civil Rights, as is required by law. Nor has it apparently made any disclosure to any of several states in which affected patients may be located.

32.     Tampa General's disclosures are otherwise deficient. They do not include basic details concerning the Data Breach, including, but not limited to, why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Tampa General knows about the degree to which the data has been disseminated.

33.     Tampa General has not nearly disclosed all the details of the Data Breach and its investigation. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Tampa General has taken to secure the PII and PHI still in its possession. Plaintiffs seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiffs' and Class Members' interests, and ensure that Tampa General has proper measures in place to prevent similar incidents from occurring in the future.

### Tampa General's Privacy Policies

34.     The Health Insurance Portability and Accountability Act ('HIPAA') requires that Tampa General maintain strict privacy practices. Tampa General's "Joint Notice Privacy Policy" claims that it is "committed to protecting the privacy of your health information."[4]

---

[4] Joint Notice Privacy Policy, available at https://www.tgh.org/patients-visitors/joint-notice-privacy-policy (last visited July 21, 2023).

35.     The Joint Notice Privacy Policy further provides that "[t]he law permits [Tampa General] to use or disclose your health information for the following purposes." Those "purposes" do not encompass the Data Breach."[5]

36.     An earlier version of the Joint Notice Privacy Policy provides that Tampa General is "required by law to: …  [m]ake sure that health information that identifies you is kept private."[6]

**The Healthcare Sector is a Primary Target for Data Breaches**

37.     Tampa General was on notice that companies in the healthcare industry are susceptible targets for data breaches.

38.     Tampa General was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically

---

[5] *Id.*

[6] Joint Notice of Privacy Practice And Notice of Organized Health Care Arrangement, available at https://extmedia.tgh.org/sites/default/files/TGH_Files/joint_notice_of_privacy_practice_12.17.pdf (last visited July 21, 2023).

noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[7]

39.     The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[8], to 1,638 in 2021.[9] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[10]

40.     At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[11] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12] Almost 50 percent of the victims lost their healthcare coverage as a result of the

---

[7] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Mar. 14, 2023).

[8] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Mar. 14, 2023).

[9] *See* Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Mar. 14, 2023).

[10] *Id.* at 62.

[11] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Mar. 14, 2023).

[12] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Mar. 14, 2023).

incident, while nearly 30 percent said their insurance premiums went up after the event. Forty

percent of the customers were never able to resolve their identity theft at all. Data breaches and

identity theft have a crippling effect on individuals and detrimentally impact the economy.[13]

41.     Healthcare-related breaches have persisted because criminals see electronic

patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent

of participating hospital information security leaders reported having a significant security

incident in the previous 12 months, with a majority of these known incidents being caused by

"bad actors" such as cybercriminals.[14] "Hospitals have emerged as a primary target because they

sit on a gold mine of sensitive personally identifiable information for thousands of patients at any

given time. From social security and insurance policies, to next of kin and credit cards, no other

organization, including credit bureaus, have so much monetizable information stored in their data

centers."[15]

42.     The American Medical Association ("AMA") has also warned healthcare

companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue.
> AMA research has revealed that 83% of physicians work in a practice
> that has experienced some kind of cyberattack. Unfortunately, practices
> are learning that cyberattacks not only threaten the privacy and security
> of patients' health and financial information, but also patient access to
> care.[16]

---

[13] *Id.*

[14] *2019 HIMSS Cybersecurity Survey* (available at
https://www.himss.org/sites/hde/files/d7/
u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf) (last accessed Mar. 14, 2023).

[15] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*,
Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-
from-email-spoofing-attacks) (last accessed Mar. 14, 2023).

[16] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*,
Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-

43.     As a major healthcare provider, Tampa General knew, or should have known, the importance of safeguarding the patients' PII and PHI entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Tampa General's patients because of a breach. Tampa General failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Tampa General Stores Plaintiffs' and Class Members' PII and PHI**

44.     Tampa General obtains and stores a massive amount of its patients' PII and PHI. As a condition of engaging in health services, Tampa General requires that patients entrust it with highly confidential PII and PHI.

45.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' PII and PHI, Tampa General assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII and PHI from disclosure.

46.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and, as Tampa General's current and former patients, they rely on Tampa General to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

47.     Tampa General was aware that the PII and PHI it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

---

management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Mar. 14, 2023).

48.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[17] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[18]

49.     PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

50.     Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

---

[17] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Mar. 14, 2023).

[18] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Mar. 14, 2023).

[19] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Mar. 14, 2023).

51.     The ramifications of Tampa General's failure to keep its patients' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

52.     Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

53.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened.[20] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[21]

54.     Tampa General knew, or should have known, the importance of safeguarding its patients' PII and PHI entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Tampa General's patients because of a breach. Tampa General failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[20] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Mar. 14, 2023).

[21] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Mar. 14, 2023).

**The Data Breach Exposed Plaintiffs and Class Members
to Identity Theft and Out-of-Pocket Losses**

55.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

56.     Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Tampa General's policies and practices with respect to maintaining the security of its patients' PII and PHI were reckless, or at the very least, negligent.

57.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiffs and Class Members should be compensated for the time they have expended because of Tampa General's misfeasance.

58.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[22]

59.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiffs and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.   losing the inherent value of their PII and PHI;

    b.   identity theft and fraud resulting from the theft of their PII and PHI;

---

[22]     2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Mar. 14, 2023).

c.  costs associated with the detection and prevention of identity theft;

d.  costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

e.  lowered credit scores resulting from credit inquiries following fraudulent activities;

f.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

g.  the continued imminent injury flowing from potential fraud and identify theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**Tampa General's Lax Security Violates HIPAA**

60.  Tampa General had a non-delegable duty to ensure that all PHI it collected and stored was secure.

61.  Tampa General is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

62.     These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

63.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

64.     HIPAA requires that Tampa General implement appropriate safeguards for this information.

65.     Despite these requirements, Tampa General failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, Tampa General failed to:

    a.   maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.   adequately protect Plaintiffs' and Class Members' PHI;

    c.   ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    d.   implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

    e.   implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

    f.   implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    g.   protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

    h.   ensure compliance with the electronic PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

    i.   train all members of its workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

66.    Tampa General failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiffs' and Class Members' PHI.

**Tampa General Violated FTC Guidelines**

67.    The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Tampa General from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

68.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[23]

69.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[24] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

70.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[25]

71.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting

---

[23] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Mar. 14, 2023).

[24] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Mar. 14, 2023).

[25]     FTC, *Start With Security*, *supra*.

from these actions further clarify the measures businesses must take to meet their data security obligations.

72.     Tampa General failed to properly implement basic data security practices. Tampa General's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

73.     Tampa General was at all times fully aware of its obligation to protect its patients' PII and PHI because of its position as a healthcare provider. Tampa General was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated pursuant to Florida Rule of Civil Procedure 1.220. Plaintiffs seek certification of a Class (the "Class") as defined below:

> All Florida citizens whose PII and/or PHI was compromised in the data breach disclosed by Tampa General on July 19, 2023.

75.     Excluded from the Class are Tampa General, any entity in which Tampa General has a controlling interest, and Tampa General's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

76.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiffs.

77.     **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Tampa General has disclosed that the Data Breach affected

approximately 1.2 million patients. All Class Members' names and addresses are available from Tampa General's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

78.    **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether and to what extent Tampa General had a duty to protect the PII and PHI of Class Members;

    b.  Whether Tampa General was negligent in collecting and storing Plaintiffs' and Class Members' PII and PHI;

    c.  Whether Tampa General had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

    d.  Whether Tampa General took reasonable steps and measures to safeguard Plaintiffs' and Class Members' PII and PHI;

    e.  Whether Tampa General failed to adequately safeguard the PII and PHI of Class Members;

    f.  Whether Tampa General failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

    g.  Whether Tampa General adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII and PHI had been compromised;

h.   Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Tampa General's wrongful conduct;

i.   Whether Plaintiffs and Class Members are entitled to restitution because of Tampa General's wrongful conduct;

j.   Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.   Whether Plaintiffs and Class Members are entitled to identity theft protection for their respective lifetimes.

79.   **Typicality:** Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII and PHI, like that of every other Class Member, was disclosed by Tampa General. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Tampa General's common misconduct. Plaintiffs are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiffs' claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

80.   **Adequacy:** Plaintiffs are adequate representatives of the Class because Plaintiffs are members of the Class and are committed to pursuing this matter against Tampa General to obtain relief for the Class. Plaintiffs have no conflicts of interest with the Class. Plaintiffs' counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

81.     **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Tampa General has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Tampa General's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Tampa General's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

82.     **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Tampa General. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

83.     The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Tampa General would necessarily gain an unconscionable advantage in non-class litigation, since Tampa General would be able to exploit and overwhelm the limited resources of each individual

Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

84.     The litigation of Plaintiffs' claims is manageable. Tampa General's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

85.     Adequate notice can be given to Class Members directly using information maintained in Tampa General's records.

86.     Unless a class-wide injunction is issued, Tampa General may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Tampa General may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Tampa General may continue to act unlawfully as set forth in this Complaint.

87.     Tampa General has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Fla. R. Civ. P. 1.220.

**COUNT I**
**NEGLIGENCE**
**(on behalf of Plaintiffs and the Class)**

88.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

89.     Tampa General knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Tampa General's security protocols to ensure that Plaintiffs' and Class Members' Private Information in Defendant's possession was adequately secured and protected, that Plaintiffs' and Class Members' Private Information on Tampa General's networks were not accessible to criminals without authorization, and that Tampa General employees tasked with maintaining such information were adequately trained on security measures regarding the security of customers/patients' PII and PHI.

90.     As a condition of utilizing Tampa General's services, Plaintiffs and Class Members were obligated to provide their PII and PHI to Tampa General.

91.     Plaintiffs and Class Members entrusted their PII and PHI to Tampa General with the understanding that Tampa General would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

92.     Tampa General knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiffs' and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiffs and Class Members.

93.     Tampa General also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII and PHI.

94.     A breach of security, unauthorized access, and resulting injury to Plaintiffs and Class Members was reasonably foreseeable, particularly in light of prior data breaches and

disclosures prevalent in today's digital landscape, including the explosion of data breaches involving similarly situated healthcare providers.

95.     Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Tampa General knew or should have known of the inherent risks in collecting and storing Plaintiffs' and Class Members' PII and PHI, the critical importance of providing adequate security of that information, the necessity for encrypting PHI stored on Tampa General's systems, and that it had inadequate IT security protocols in place to secure Plaintiffs' and Class Members' PII and PHI.

96.     Tampa General's own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Tampa General's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

97.     Plaintiffs and Class Members had no ability to protect their PII and PHI that was in Tampa General's possession.

98.     Tampa General was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

99.     Tampa General had, and continues to have, a duty to timely disclose that Plaintiffs' and Class Members' PII and PHI within its possession was compromised and precisely the type(s) of information that were compromised.

100.     Tampa General had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' Private Information.

101.     Tampa General systematically failed to provide adequate security for data in its possession.

102.    Tampa General, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' PII and PHI within its possession.

103.    Tampa General, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiffs' and Class Members' PII and PHI.

104.    Tampa General, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiffs and Class Members that the PII and PHI within Tampa General's possession might have been compromised and precisely the type of information compromised.

105.    Tampa General's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' PII and PHI to be compromised.

106.    But for all of Tampa General's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiffs' and Class Members' PII and PHI would not have been compromised.

107.    Plaintiffs never transmitted their own unencrypted PHI over the internet or any other unsecured source.

108.    Following the Data Breach, Plaintiffs' PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PHI without any ability for Plaintiffs to recapture and erase that PHI from further dissemination—Plaintiffs' PHI is forever compromised.

109.    But for the Data Breach, Plaintiffs would not have incurred the loss and publication of their PHI and other injuries.

110.     There is a close causal connection between Tampa General's failure to implement security measures to protect Plaintiffs' and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members. Plaintiffs' and Class Members' PHI was accessed and compromised as the proximate result of Tampa General's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

111.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

112.     As a result of Tampa General's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their PII and PHI, which is still in the possession of third parties, will be used for fraudulent purposes.

113.     Plaintiffs seek the award of actual damages on behalf of themselves and the Class.

114.     Plaintiffs seek injunctive relief on behalf of the Class in the form of an order (1) compelling Tampa General to institute appropriate data collection and safeguarding methods and policies with regard to patient information; and (2) compelling Tampa General to provide detailed and specific disclosure of what types of Private Information have been compromised as a result of the data breach.

**COUNT II**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiffs and the Class)**

115.     Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

116.     Pursuant to the HIPAA (42 U.S.C. § 1302d et seq.), the FTC Act, and Florida law (Fla. Stat. § 456.057 and § 501.171), Tampa General was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' PHI and PII.

117.     Tampa General breached its duties by failing to employ industry standard data and cybersecurity measures to ensure its compliance with those laws, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

118.     It was reasonably foreseeable, particularly given the growing number of data breaches of health information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' PII and PHI in compliance with applicable laws would result in an unauthorized third-party gaining access to Tampa General's networks, databases, and computers that stored or contained Plaintiffs' and Class Members' PII and PHI.

119.     Plaintiffs' and Class Members' PII and PHI constitute personal property that was stolen due to Tampa General's negligence, resulting in harm, injury and damages to Plaintiffs and Class Members.

120.     Tampa General's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class Members' unencrypted PII and PHI, and Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of Tampa General's conduct. Plaintiffs and Class Members seek damages and other relief as a result of Tampa General's negligence.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(on behalf of Plaintiffs and the Class)**

121.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

122.    When Plaintiffs and Class Members provided their PII and PHI to Tampa General, they entered into implied contracts with Tampa General, under which Tampa General agreed to take reasonable steps to protect Plaintiffs' and Class Members' PII and PHI, comply with it statutory and common law duties to protect Plaintiffs' and Class Members' PII and PHI, and to timely notify them in the event of a data breach.

123.    Tampa General solicited and invited Plaintiffs and Class Members to provide their PII and PHI as part of Tampa General's provision of healthcare services. Plaintiffs and Class Members accepted Tampa General's offers and provided their PII and PHI to Tampa General.

124.    When entering into implied contracts, Plaintiffs and Class Members reasonably believed and expected that Tampa General's data security practices complied with its statutory and common law duties to adequately protect Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach.

125.    Tampa General's implied promise to safeguard PII and PHI is evidenced by, *e.g.*, the representations in Tampa General's Notice of Privacy Practices set forth above.

126.    Plaintiffs and Class Members paid money to Tampa General receive healthcare services. Plaintiffs and Class Members reasonably believed and expected that Tampa General would use part of those funds to obtain adequate data security. Tampa General failed to do so.

127.    Plaintiffs and Class Members would not have provided their PII and PHI to Tampa General had they known that Tampa General would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach.

128.    Plaintiffs and Class Members fully performed their obligations under their implied contracts with Tampa General.

129.    Tampa General breached its implied contracts with Plaintiffs and Class Members by failing to safeguard Plaintiffs' and Class Members' PII and PHI and by failing to provide them with timely and accurate notice of the Data Breach.

130.    The losses and damages Plaintiffs sustained, include, but are not limited to:

a.  Theft of their PII and PHI;

b.  Costs associated with purchasing credit monitoring and identity theft protection services;

c.  Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d.  Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.  Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g.   Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Tampa General with the mutual understanding that Tampa General would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their Private Information, which remains in Tampa General's possession and is subject to further breaches so long as Tampa General fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data; and

i.   Emotional distress from the unauthorized disclosure of Private Information to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiffs and Class Members.

131.   As a direct and proximate result of Tampa General's breach of contract, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**(on behalf of Plaintiffs and the Class)**

132.   Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

133.   Tampa General has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship, as a consequence of the special

31

relationship of trust and confidence that exists between patients (like Plaintiffs and Class Members) and their medical care providers (like Tampa General).

134.    In light of their special relationship, Tampa General has become the guardian of Plaintiffs' and Class Members' PII and PHI. Tampa General has become a fiduciary, created by its undertaking and guardianship of patient PII and PHI, to act primarily for the benefit of its patients, including Plaintiffs and Class Members. This duty included the obligation to safeguard Plaintiffs' and Class Members' PII and PHI and to timely notify them in the event of a data breach.

135.    Tampa General breached its fiduciary duties owed to Plaintiffs and Class Members by failing to:

a.  properly encrypt and otherwise protect the integrity of the system containing Plaintiffs' and Class Members' PII and PHI;

b.  timely notify and/or warn Plaintiffs and Class Members of the Data Breach;

c.  ensure the confidentiality and integrity of electronic protected health information Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d.  implement technical policies and procedures to limit access to only those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

e.  implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1);

f.  identify and respond to suspected or known security incidents; mitigate to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

g.  protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. § 164.306(a)(2);

h.  protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

i.  ensure its compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(94);

j.  properly use and disclose PHI that is and remains accessible to unauthorized persons in violation of 45 C.F.R. § 164.502, et seq.;

k.  effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5);

l.  design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. § 164.530(c); and

m.  otherwise failing to safeguard Plaintiffs' and Class Members' Personal

Information.

136.    As a direct and proximate result of Defendant's breaches of its fiduciary duties,

Plaintiffs and Class Members have suffered and will suffer injury, including, but not limited to:

(i) actual identity theft; (ii) the compromise, publication, and/or theft of their Personal

Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery

from identity theft and/or unauthorized use of their Personal Information; (iv) lost opportunity

costs associated with effort attempting to mitigate the actual and future consequences of the Data

Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest,

and recover from identity theft; (v) the continued risk to their Personal Information, which

remains in Defendant's possession and is subject to further unauthorized disclosures so long as

Defendant fails to undertake appropriate and adequate measures to protect patient Personal

Information in their continued possession; and (vi) future costs in terms of time, effort, and

money that will be expended to prevent, detect, contest, and repair the impact of the Personal

Information compromised as a result of the Data Breach for the remainder of the lives of

Plaintiffs and Class Members.

137.    As a direct and proximate result of Defendant's breach of its fiduciary duty,

Plaintiffs and Class Members have suffered and will continue to suffer injury and/or harm.

**COUNT V**
**BREACH OF CONFIDENCE**
**(on behalf of Plaintiffs and the Class)**

138.    Plaintiffs re-allege and incorporate by reference herein all the allegations

contained in the preceding paragraphs.

139.    Plaintiffs and Class Members have an interest, both equitable and legal, in their Private Information that was conveyed to, collected by, and maintained by Tampa General and that was accessed or compromised in the Data Breach.

140.    Tampa General was provided with and stored private and valuable PHI related to Plaintiffs and the Class, which it was required to maintain in confidence.

141.    Plaintiffs and the Class provided Tampa General with their personal and confidential PHI under both the express and/or implied agreement of Tampa General to limit the use and disclosure of such PHI.

142.    Tampa General owed a duty to Plaintiffs and Class Members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PHI in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

143.    Tampa General had an obligation to maintain the confidentiality of Plaintiffs' and Class Members' PHI.

144.    Plaintiffs and Class Members have a privacy interest in their personal medical matters, and Tampa General had a duty not to disclose confidential medical information and records concerning its patients.

145.    As a result of the parties' relationship, Tampa General had possession and knowledge of confidential PHI and confidential medical records of Plaintiffs and Class Members.

146.    Plaintiffs' and Class Members' PHI is not generally known to the public and is confidential by nature.

147.     Plaintiffs and Class Members did not consent to nor authorize Tampa General to release or disclose their PHI to unknown criminal actors.

148.     Tampa General breached the duties of confidence it owed to Plaintiffs and Class Members when Plaintiffs' and Class Members' PHI was disclosed to unknown criminal hackers.

149.     Tampa General breached its duties of confidence by failing to safeguard Plaintiffs' and Class Members' PHI, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its on privacy policies and practices published to its patients; (h) storing PHI and medical records/information in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and (i) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class Members' PHI and medical records/information to a criminal third party.

150.     But for Tampa General's wrongful breach of its duty of confidences owed to Plaintiffs and Class Members, their privacy, confidences, and PHI would not have been compromised.

151.     As a direct and proximate result of Tampa General's breach of Plaintiffs' and Class Members' confidences, Plaintiffs and Class Members have suffered injuries, including:

a. Loss of their privacy and confidentiality in their PHI;

b. Theft of their Private Information;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d. Costs associated with purchasing credit monitoring and identity theft protection services;

e. Lowered credit scores resulting from credit inquiries following fraudulent activities;

f. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Tampa General Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

h. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Tampa General with the mutual understanding that Tampa General would safeguard Plaintiffs' and Class Members' data against theft and not allow access and misuse of their data by others;

i. Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Tampa General's possession and is subject to further breaches so long

as Tampa General fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' data;

j.   Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received, as directed to do by Tampa General; and

j.   Mental anguish accompanying the loss of confidences and disclosure of their confidential and private PHI.

152.   Additionally, Tampa General received payments from Plaintiffs and Class Members for services with the understanding that Tampa General would uphold its responsibilities to maintain the confidences of Plaintiffs' and Class Members' private medical information.

153.   Tampa General breached the confidence of Plaintiffs and Class Members when it made an unauthorized release and disclosure of their confidential medical information and/or PHI and, accordingly, it would be inequitable for Tampa General to retain the benefit at Plaintiffs' and Class Members' expense.

154.   As a direct and proximate result of Tampa General's breach of its duty of confidences, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**COUNT VI**
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 501.201,** *et seq.*
**(on behalf of Plaintiffs and the Class)**

155.   Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

156.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201, *et seq.* The express purpose of the FDUPTA is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

157.     Tampa General's sale of goods and medical services at issue in this cause are "consumer transaction[s]" within the scope of the FDUTPA. Fla. Stat. §§ 501.201-501.213. Plaintiff is a "consumer[s]" as defined by the FDUTPA. Fla. Stat. § 501.203. Tampa General is engaged in trade or commerce within the meaning of the FDUTPA.

158.     The FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

159.     The FDUPTA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2). Tampa General's unfair and deceptive practices are likely to mislead — and have misled — the consumer acting reasonably under the circumstances. Fla. Stat. § 500.04; 21 U.S.C. § 343. As set forth above, Tampa General's Data Breach was a result of its substandard data and cybersecurity practices in violation of the state and federal requirements as set forth above.

160.     Pursuant to the FCRA, HIPAA (42 U.S.C. § 1302d et seq.), the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), Tampa General was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' PII and PHI. Tampa General was also under an

39

obligation expressly under Florida law, where Tampa General is headquartered and managed, to adequately protect Plaintiffs' and Class Members' PII and PHI. Among other things, Florida law requires Tampa General to (1) take reasonable measures to protect and secure data in electronic form containing PII; (2) take reasonable measures to dispose of or destroy PII and PHI; and (3) provide notice to consumers and consumer reporting agencies subject to the FCRA when a data security incident occurs that compromises PII and PHI. Fla. Stat. §§ 501.171.

161.    Tampa General has violated the FDUPTA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. At all times material herein, Tampa General has failed to maintain adequate and reasonable data and cybersecurity protocols for Plaintiffs' and Class Members' PII and PHI in violation of state and federal laws and its own privacy practices and policies. Tampa General has also failed to take reasonable measures to destroy or dispose of PII and PHI and timely notify its patients of the Data Breach in violation of Florida law.

162.    Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering a loss of privacy, money and/or property as a result of the wrongful conduct alleged herein. Plaintiffs would not have purchased Tampa General's goods and services (or paid as much) had they known the truth about Tampa General's substandard data and cybersecurity measures. Moreover, Tampa General will continue to maintain Plaintiffs' and Class Members' PII and PHI for the indefinite future, giving them a strong interest in ensuring such data is protected consistent with industry standards to prevent future data breaches. As a direct result of Tampa General's actions and omissions of material facts, Plaintiffs and Class Members did not obtain the value of the goods and services for which they paid; were induced to pay for (or pay

more for) medical goods and services that they otherwise would not have; and lost their ability to make informed and reasoned decisions about their medical treatment.

163.    The damages suffered by Plaintiffs and Class Members were directly and proximately caused by Tampa General's deceptive, misleading and unfair practices, as described above.

164.    Plaintiffs and Class Members seek declaratory judgment that Tampa General's data security practices were not reasonable or adequate and caused the Data Breach under the FDUTPA, as well as injunctive relief enjoining the above-described wrongful acts and practices of Tampa General, and requiring Tampa General to employ and maintain industry accepted standards for data management and security, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing. Fla. Stat. § 501.211(1).

165.    Additionally, Plaintiffs and Class Members make claims for actual damages, attorneys' fees and costs. Fla. Stat. §§ 501.2105, 501.211(2).

## COUNT VII
## UNJUST ENRICHMENT
### (on behalf of Plaintiffs and the Class)

166.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

167.    Plaintiffs and Class Members have an interest, both equitable and legal, in their PHI and PII that was conferred upon, collected by, and maintained by Tampa General and that was stolen in the Data Breach.

168.    Tampa General benefitted from the conferral upon it of Plaintiffs' and Class Members' PII and PHI, and by its ability to retain and use that information. Tampa General understood that it so benefitted.

169.    Tampa General also understood and appreciated that Plaintiffs' and Class Members' PHI and PII was private and confidential and that its value depended upon Tampa General maintaining its privacy and confidentiality.

170.    But for Tampa General's willingness and commitment to maintain its privacy and confidentiality, that PHI and PII would not have been transferred to and entrusted with Tampa General. Further, if Tampa General had disclosed that its data security measures were inadequate, Tampa General would not have been permitted to continue in operation by regulators and the healthcare marketplace.

171.    As a result of Tampa General's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiffs' and Class Members' PHI without having adequate data security measures, and its other conduct facilitating the theft of that PHI and PII), Tampa General has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class Members.

172.    Tampa General's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiffs' and Class Members' sensitive PHI and PII, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

173.    Under the common law doctrine of unjust enrichment, it is inequitable for Tampa General to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiffs' and Class Members' PHI and PII in an unfair and unconscionable manner. Tampa General's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

174.    The benefit conferred upon, received, and enjoyed by Tampa General was not conferred officiously or gratuitously, and it would be inequitable and unjust for Tampa General to retain the benefit.

**COUNT VIII**
**INJUNCTIVE/DECLARATORY RELIEF**
**(on behalf of Plaintiffs and the Class)**

175.    Plaintiffs re-allege and incorporate by reference herein all the allegations contained in the preceding paragraphs.

176.    Tampa General owes a duty of care to Plaintiffs and Class Members requiring it to adequately secure PII and PHI.

177.    Tampa General still stores Plaintiffs' and Class Members' PII and PHI.

178.    Since the Data Breach, Tampa General has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

179.    Tampa General has not satisfied its legal duties to Plaintiffs and Class Members.

180.    Actual harm has arisen in the wake of the Data Breach regarding Tampa General's duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Tampa General's failure to address the security failings that led to that exposure.

181.    Plaintiffs, therefore, seek a declaration: (a) that Tampa General's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Tampa General must implement and maintain reasonable security measures, including, but not limited to, the following:

43

a.  ordering that Tampa General engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Tampa General's systems on a periodic basis, and ordering Tampa General to promptly correct any problems or issues detected by such third-party security auditors;

b.  ordering that Tampa General engage third-party security auditors and internal personnel to run automated security monitoring;

c.  ordering that Tampa General audit, test, and train its security personnel regarding any new or modified procedures;

d.  ordering that Tampa General segment patient data by, among other things, creating firewalls and access controls so that if one area of Tampa General's system is compromised, hackers cannot gain access to other portions of Tampa General's systems;

e.  ordering that Tampa General purge, delete, and destroy in a reasonably secure manner patient data not necessary for its provision of services;

f.  ordering that Tampa General conduct regular computer system scanning and security checks;

g.  ordering that Tampa General routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  ordering Tampa General to meaningfully educate its current, former, and prospective patients about the threats they face because of the loss of their PHI to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiffs and their counsel to represent the Class;

b. for equitable relief enjoining Tampa General from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

c. for equitable relief compelling Tampa General to use appropriate cyber security methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 21, 2023

Respectfully submitted,

**THE CONSUMER PROTECTION FIRM, PLLC**

*/s/ William Peerce Howard*

William "Billy" Peerce Howard
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL 33602
(813) 500-1500
Billy@TheConsumerProtectionFirm.com

**BAILEY GLASSER LLP**
John W. Barrett
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

**BAILEY GLASSER LLP**
Bart D. Cohen
1622 Locust Street
Philadelphia, PA  19103
(215) 274-9420
bcohen@baileyglasser.com

*Attorneys for Plaintiffs and the Proposed Class*